IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MARTEL MCCREERY, JR.                                                                                   PLAINTIFF

v.                                          Civil No. 4:19-cv-04004

OFFICER WHITT, DEPUTY,
Miller County Sheriff's Office;
And SHERIFF JACKIE RUNION                                                                      DEFENDANTS

### REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, Martel McCreery, Jr., under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants Whitt and Runion. (ECF No. 20). Plaintiff filed a Response (ECF No. 24) and Defendants filed a Reply. (ECF No. 25). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"), Delta Regional Unit. Plaintiff's claims in this action arise from alleged incidents that occurred during his arrest in February of 2018 and subsequent incarceration in the Miller County Detention Center ("MCDC").

On February 8, 2018, Plaintiff's mother called 911 and informed dispatch her son was drunk and trying to break into her home. Defendant Whitt, a Miller County Sheriff's Department Deputy, responded to the 911 call at the residence of Plaintiff's mother. At the time of the incident, Defendant Whitt was driving an unmarked vehicle with the police lights on and he was wearing his Miller County Sheriff's Deputy Criminal Investigative Unit Uniform with his badge on the

1

front.  (ECF No. 20-1, p. 1).

Upon arrival at the scene, Defendant Whitt observed Plaintiff kicking at the door of the residence.  At this time Defendant Whitt was the only officer on site as police back up was in route.  Defendant Whitt identified himself as law enforcement and told Plaintiff to come down off the porch and speak with him.  Plaintiff came off the porch, picked up a brick, and threw it at Defendant Whitt yelling "get the f*** out of here."  Plaintiff then pulled a pocket knife out of his pocket, opened it, and advanced toward Defendant Whitt.  Defendant Whitt retreated to his car and retrieved his pepper spray gun from the trunk.  (ECF No. 20-1, pp. 1-2).

Plaintiff returned to the house and Defendant Whitt followed him.  Plaintiff again picked up a brick threw it at Defendant Whitt and began kicking at the door of the residence.  Defendant Whitt then gave verbal commands for Plaintiff to come off the porch and get on the ground.  In response Plaintiff said "f*** you," and again drew the knife from his pocket and pointed it in an aggressive manner toward Defendant Whitt.  (ECF No. 20-1, p. 2).

In his affidavit Defendant Whitt states, "I believed that McCreery was going to lunge at me with the knife and I was in fear of being stabbed with it.  I shot McCreery with the pepper spray twice in the face, and then used my hands to bring McCreery to the ground and handcuffed him." (ECF No. 20-1, p. 2).

By the time Defendant Whitt handcuffed Plaintiff, other Miller County Sheriff's deputies arrived on the scene and Defendant Whitt released Plaintiff to the deputies to be transported to the MCDC.  (ECF No. 20-1, p. 2).

Defendant Whitt interviewed Plaintiff's mother and she informed him Plaintiff was intoxicated and for two hours before her 911 call he had been busting out the windows of her house.  Defendant Whitt states he observed busted windows, bricks inside the house and broken

potted plants. (ECF No. 20-1, pp. 2-3).[1]

As Defendant Whitt left the scene, he observed the other deputies "seeing to his [Plaintiff's] pepper spray and getting him water". (ECF No. 20-1, p. 2). Plaintiff was then transported to the MCDC and charged with aggravated assault and criminal mischief and booked into the MCDC. Defendant Whitt was not present at the MCDC when Plaintiff arrived at the facility. *Id.*

The knife used by Plaintiff was placed into an evidence locker along with the property submission form. A use of force report was also completed by Defendant Whitt. (ECF No. 20-1, p. 3).

According to the affidavit of the MCDC's Jail Administrator Al Landreth, Plaintiff did not file any grievance or complaint concerning any incident of excessive force or any policy related thereto. (ECF No. 20-4, p. 1).

On June 6, 2018, Plaintiff submitted a medical request stating, "I need some more teeth pulled; the guy wouldnent pull all of them last time; whats up you gona charge another 10 bucks///". (ECF No. 24, p. 3). S. King, the Medical Team Administrator for the MCDC, responded that same day informing Plaintiff, "You've been placed on the list to see the dentist during his next visit. There is a $10 copay for seeing the dentist plus $5 for each med he prescribes. Dentist will be here this Saturday." *Id.*

On June 7, 2018, Plaintiff submitted a second medical request stating, "when I was arrested something happened to my left leg; I can lift my foot up so far.butthats it'my foot drags, I thought it would straighten out on its on self. But it seems to be getting worse thank you." (ECF No. 20-6, p. 1). S. King responded that same day stating in part, "I see you walk normal everyday to pill

---

[1] Defendants provided the Court with photos of the bricks, damage to the house, and the knife Plaintiff pointed at Defendant Whitt. (ECF No. 20-3, pp. 1-8).

3

pass and diabetic checks…This is the first time you've stated you were injured during arrest and you've been here 4 months." *Id.*

The MCDC has policies in place regarding the operation of the facility and the treatment of inmates including but not limited to a procedure for filing grievances or complaints. (ECF No. 20-5, p. 1). A complaint is defined as "a verbal and/or written communication with staff for informal resolution of an incident, policy, procedure, or condition within the jail which personally/directly affects the inmate." A grievance is defined as "written communication for formal resolution of an incident, policy, procedure, or condition within the jail which personally affects the inmate filing the grievance. A grievance can only be made subsequent to filing a written complaint and receiving a written response." *Id.*

The MCDC's policy and procedure regarding the submission of complaints provides they are first submitted through a KIOSK. Inmate "requests/concerns/complaints" are reviewed daily (excluding weekends and holidays) and sent to the appropriate person to address. Complaints are forwarded to the lowest appropriate supervisory level to address and respond. (ECF No. 20-5, p. 4). The supervisor addressing the complaint is required to deliver a response to the inmate. Inmates who are unable to resolve a complaint through the procedure using the KIOSK are then required to submit a grievance in accordance with the MCDC's grievance procedure. *Id.* at p. 4.

Within thirty (30) calendar days of receipt of a grievance, the grievance is reviewed and if applicable thoroughly investigated. (ECF No. 20-5, p. 5). The investigation results are then provided to the Jail Warden or the Risk Management Officer, in writing. *Id.* An inmate may appeal the result of the grievance findings to the Jail Warden by stating they wish to "APPEAL THE FINDINGS ON THE 'INMATE ACKNOWLEGEMENT FORM'". (ECF No. 20-5, p. 5). Following the disposition of the appeal, the Request for Administrative Remedy Form shall be

returned to the Risk Management Officer and the case number closed out. The form is then forwarded to the Lieutenant or Captain for distribution, copies are made for the inmate's classification file, and then delivered to the inmate. (ECF No. 20-5, p. 7).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on January 16, 2019, in Eastern District of Arkansas. (ECF No. 2). The following day, the case was transferred to the Western District, Texarkana Division. (ECF No. 4). That same day, Plaintiff's application to proceed *in forma pauperis* was granted. (ECF No. 6).

In his Complaint Plaintiff named Defendant Whitt as the only defendant. (ECF No. 2). He alleges on February 8, 2018, Defendant Whitt used excessive force against him when he "approached me from behind and shot me in my left ear with a mace gun. The projectile from the gun made me lose conscienceness and incapacitated me. When I regained conscienceness I was being kicked all over my body and my location was now at Miller County Jail." *Id.* at p. 3. Plaintiff also alleges "they broke my ribs, broke my front teeth out, they damaged the tendon…in my left foot, they damaged my left ear, knocked the fillings out of my back teeth and I have vision loss in my left eye…" *Id.*[2] In addition, Plaintiff states, "I was no stranger at this address, this was the house I lived at my whole life with my mother and if the Deputy would have made himself known I would have complied and would have never resisted." *Id.*

On February 22, 2019, Plaintiff filed a Supplement to his Complaint adding a request for punitive damages and medical costs to his request for recovery of compensatory damages. (ECF No. 14). In addition, Plaintiff states, "I am adding Sheriff Jackie Runion, of the Miller County

---

[2] Plaintiff does not identify who "they" are.

5

Sheriff's Department…as one of the Defendant's, because they are responsible, for the action, of their employees." *Id.* at p. 2. Plaintiff is suing Defendants in their personal and official capacities.

On October 3, 2019, Defendants filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) Plaintiff failed to exhaust his administrative remedies with respect to his claims of excessive force; 2) Defendant Whitt's use of force was objectively reasonable under the circumstances; 3) Plaintiff has not identified any individuals at the MCDC involved in the alleged use of excessive force at the detention center; 4) Defendant Runion cannot be held liable under the theory of vicarious liability; 5) Defendants are entitled to qualified immunity; and 6) there are no grounds for official capacity liability. (ECF No. 20).

On October 23, 2019, Plaintiff filed a Response in opposition to Defendants' motion. (ECF No. 24). Plaintiff seems to argue the defenses set forth in Defendant Whitt's Answer (ECF No. 11) are inconsistent with Plaintiff's injuries. He also states in part, "this lawsuit is about a constitutional violation, this is about the …assault using excessive force; being tased in the face and head can never be justified. Stomping; kicking; and beating a downed man is a constitutional violation, I feared for my life…is why; I never grieved this matter at this facility."[3] *Id.* at p. 2.

Plaintiff also attached to his Response a photo of himself which he claims shows "what I looked like after they got done with me". (ECF No. 24, p. 3). Plaintiff also submitted a medical request submitted on June 6, 2018, stating he needs "more teeth pulled" (ECF No. 24, p. 3), and copies of progress notes from Dentrust Optimized Care Solutions dated April 28 and June 9, 2018, confirming Plaintiff had teeth pulled on those dates. *Id.* at p. 5.

In addition, Plaintiff attached an affidavit to his Response signed by himself and what looks

---

[3] The Court notes Plaintiff's Response is not verified.

to be three other inmates. (ECF No. 24, p. 1). In the affidavit Plaintiff states:

> I was arrested 6/8/19 in my mother's front yard. I was shot in the head twice with JPX gun amm. Bullets…I heard a woosh, my mother screamed out…that's the last thing I remember until county jail where the police woke me up. They told me to take my clothes off, I felt in my pockets and said you all forgot this – my old timer, I sordor shuffled it from my left hand to my right closed the blade and put it on the counter. Then the officer[4] jumped over the counter and kicked a mud hole in myself. My teeth were knocked out between my mother's yard, and Miller Co. My tinden in my lower left leg was stripped nearly into….

(ECF No. 24, p. 7). Although the writing is difficult to decipher, it appears three other inmates signed the affidavit above Plaintiff's signature and state, "I know Mr. McCeery and attest that the damage he suffered was real from Miller Co." *Id.*

On October 25, 2019, Defendants filed a Reply arguing: 1) Plaintiff did not file a proper response to their Statement of Facts and therefore, those facts should be deemed admitted; 2) Plaintiff's claim he did not file a grievance because "he feared for his life" is not legally significant because there is no evidence any prison official interfered with Plaintiff's ability to utilize the grievance process at the MCDC; and 3) Plaintiff has not presented any causation evidence to demonstrate his alleged medical issues were caused by the use of excessive force nor has he presented any verifying medical evidence to establish a detrimental effect of any delay in medical treatment. (ECF No. 25).[5]

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] Plaintiff does not identify who "the officer" is.
[5] Neither Plaintiff's Complaint nor his Supplement asserts a claim for denial of medical care and therefore this claim is not properly before the Court.

7

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.  DISCUSSION

### A.  Failure to Exhaust Administrative Remedies

Plaintiff alleges he was subjected to excessive force on June 8, 2018, during his arrest and again after he arrived at the MCDC.  Defendants argue Plaintiff failed to exhaust his administrative remedies on these claims before he filed the instant lawsuit and consequently his claims are barred.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Exhaustion is mandatory.  *Porter v.*

*Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute the MCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights. (ECF No. 20-5). The summary judgment record confirms Plaintiff did not file any grievance related to the use of excessive force during his arrest or when he was booked into the MCDC on February 8, 2018. Moreover, Plaintiff has not alleged any of the Defendants prevented him from utilizing the grievance procedure or failed to comply with the procedure itself. Instead he states he did not file any grievance because he "thought [he] would recover from the damage and did not consider the long-term effects." (ECF No. 2, p.   ).[6] This does not excuse Plaintiff from following the MCDC's

---

[6] In his unverified Response Plaintiff states, he did not file grievances because "he feared for his life". (ECF No. 24, p. 2). The Court will not consider this unverified statement in this Report and Recommendation on the motion for

9

grievance procedure. Accordingly, I recommend Plaintiff's excessive force claims against Defendants be dismissed for failure to exhaust his administrative remedies.

Even if Plaintiff had exhausted his administrative remedies prior to filing this lawsuit, as discussed below, the Court finds Plaintiff's claims for excessive force fail on the merits.

### B. Excessive Force During Arrest

Plaintiff alleges Defendant Whitt used excessive force against him during his arrest on February 8, 2018, when he sprayed him with pepper spray twice in the face. Where an excessive force claim arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

While a misdemeanor may not be severe enough on its own to warrant the use of pepper spray, *see Tatum v. Robinson,* 858 F.3d 544, 548 (8th Cir. 2017), if some degree of violence or threat to an officer's safety is present, the use of pepper spray may be objectively reasonable. *Glasper v. City of Hughes, Ark.,* 269 F. Supp. 3d 875, 891-892 (E.D. Ark. 2017). The second

---

summary judgment. *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984) (unverified pleadings are not considered in deciding a motion for summary judgment).

factor – whether the plaintiff posed a threat – is determined without regard to what prompted their conduct. This includes whether the plaintiff experienced mental illness or was intoxicated. *Frederick v. Motsinger,* 873 F.3d 641, 647 (8th Cir. 2017). In *Frederick*, the plaintiff, who was later found to be on methamphetamine at the time of the incident – was in a convenience store, acting erratic, brandishing a four-inch knife in a stabbing position, and refusing to obey the officer's commands to drop the knife. *Id.* The Eighth Circuit upheld the Western District of Arkansas' grant of summary judgment finding the officer's use of a taser was objectively reasonable because the plaintiff was ready to use the knife against officers or others. *Id.*

Here, Defendant Whitt responded to a 911 call from Plaintiff's mother during which she stated Plaintiff was drunk and trying to break into her home. When he arrived on the scene with the vehicle emergency lights flashing and wearing his Deputy uniform, Defendant Whitt identified himself as law enforcement and told Plaintiff to come down off the porch and talk to him. Plaintiff came off the porch, picked up a brick and threw it at Defendant Whitt while cursing at him to leave. Plaintiff then pulled a knife out of his pocket, opened it, and advanced toward Defendant Whitt in a threatening manner. Defendant Whitt then retreated to his car and retrieved his pepper spray gun from the trunk. As Defendant Whitt approached Plaintiff, he once again threw a brick at Defendant Whitt and he then gave verbal commands to Plaintiff to come off the porch and get on the ground. In response, Plaintiff cursed at Defendant Whitt and took out his knife and "presented it in an aggressive manner" towards Defendant Whitt. In his affidavit, Defendant Whitt states he was in fear of being stabbed by Plaintiff. Defendant Whitt then shot Plaintiff with the pepper spray twice in the face and used his hands to bring Plaintiff to the ground and handcuffed him.

Plaintiff does not dispute Defendant Whitt's description of the encounter and even admits he resisted and did not comply with Defendant Whitt's commands. However, Plaintiff claims he would not have resisted and would have complied if Defendant Whitt would have "made himself known". The Court finds Plaintiff's explanation for refusing to comply with Defendant Whitt's commands to be unsupported by the record. Although Defendant Whitt was driving an unmarked vehicle, he had the police lights on when he arrived at the residence and was wearing his Sheriff's Deputy Criminal Investigative Unit Uniform with his badge on the front. He also verbally identified himself as "law enforcement" as he approached Plaintiff. As previously stated, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Not only was Plaintiff in the process of breaking into his mother's home, he resisted and refused Defendant Whitt's verbal commands and most certainly posed a threat to the safety of Defendant Whitt when he threw bricks at him and threatened him twice with a knife. Based on these undisputed facts, the Court finds the use of pepper spray by Defendant Whitt in the process of his arrest was objectively reasonable. Accordingly, I recommend Defendant Whitt's summary judgment motion be granted as to Plaintiff's claim for excessive force arising from deployment of pepper spray during his arrest on February 8, 2018.

### C. Excessive Force at the MCDC

As for Plaintiff's claim involving excessive force at the MCDC after his arrest, the summary judgment record confirms Plaintiff did not identify Defendant Whitt or any other individual as being responsible for employing excessive force at the MCDC. In addition, the

record also confirms Defendant Whitt was not present at the MCDC when Plaintiff was booked into the facility. (ECF No. 20-1, p. 2).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted). Because Defendant Whitt was not present at the time the alleged excessive force was used against Plaintiff at the MCDC, I recommend Defendants' summary judgment motion be granted in favor of Defendant Whitt and Plaintiff's claims for excessive force be dismissed with prejudice.

### D. Claims Against Defendant Runion

At the time of the events in question Defendant Runion was the Sheriff of Miller County. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). Plaintiff does not allege Defendant Runion was present during his arrest or when he was booked into the MCDC when Plaintiff alleges excessive force was used against him. He simply states he is suing Defendant Runion because he was responsible for the actions of his employees.

As previously stated, to establish liability under section 1983 Plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. *See Clemmons* at 967. The law is clear there is no respondeat superior liability under 42 U.S.C. § 1983. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-677 (2009); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). Therefore, Plaintiff's claims against Defendants Runion fail as a matter of law and I recommend the claims against him be dismissed with prejudice.

### E. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Miller County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Plaintiff has not alleged any policy, practice, or custom of Miller County contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law. *Id.*[7]

### V. CONCLUSION

For the reasons stated above, I recommend Defendants Whitt and Runion's Motion for Summary Judgment (ECF No. 20) be **GRANTED** and all individual and official capacity claims against Defendants be **DISMISSED WITH PREJUDICE**.

---

[7] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 20th day of November 2019.**

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE